UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JILL PREJEAN,

              Plaintiff,                                    Case No. 20-cv-8018 (JPO)

v.


INFOSYS LIMITED, MARK LIVINGSTON,
DAN ALBRIGHT, and JERRY KURTZ,
Jointly and severally,

              Defendants.

_____x


## PLAINTIFF'S OPPOSITION TO

## DEFENDANT ALBRIGHT'S MOTION TO DISMISS

## PLAINTIFF'S SECOND AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………..ii-iv

INTRODUCTION………………………………………………………………….....1

I.    **DEFENDANT ALBRIGHT IS SUBJECT TO PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE CPLR 302**………….........................................................................2

    A.  Standard on 12(b)(2) Motion…………………………........................................2

    B.  Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(1) As Defendant Albright Conducted Business In The State ……......……………..............4

    C.  Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(2) As Defendant Albright Performed A Tort In New York……………..……………....9

    D.  Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(3) As Defendant Albright Performed A Tort Without New York With Effects In New York……..…………………………………………………………..…….…..12

    E.  Exercise of Personal Jurisdiction Under CPLR 302(a) Accords With Due Process………………………………………………………..…….……14

II.    **PLAINTIFF'S CLAIMS ALL ARE SUFFICIENTLY PLEADED**.................16

    A.  Standard on 12(b)(6) Motion……………………………….................................16

    B.  Plaintiff Has Stated A *Prima Facie* Case Of Age And Gender Related Hostility and Retaliation…...........................................................................................17

    C.  Plaintiff Should Be Allowed To Amend If Necessary………………………….21

CONCLUSION………………………………………………………………..……......21

# TABLE OF AUTHORITIES

## CASES

Page

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir.1993)......................................3

*Albunio v City of New York*, 16 N.Y.3d 472, 477-478, 2011 N.Y. LEXIS 498, *6.....................20

*Alexander v. Bd. of Educ.,* 648 Fed. Appx. 118, 119 (2d Cir. N.Y. 2016)...................................16

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)..................................................................................16

*Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 262, 2019 U.S. Dist. LEXIS 53760, *56, 2019 WL 1407473.....................................................................................2, 7, 9, 14

*Ballard v. Parkstone Energy, LLC*, No. 06 Civ. 13099 (RWS), 2008 U.S. Dist. LEXIS 71350, at *7 (S.D.N.Y. Sept. 19, 2008), 2008 WL 4298572.............................................21

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990).....................................................2

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)........................................................................................................................................13

*Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 388, 2006 U.S. Dist. LEXIS 27426...............................................................................................................8

*Bell Atl. Corp. v. Twombly, 550* U.S. 544, 570 (2007)..................................................................16

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997)...........................................10

*Biro v. Conde Nast,* 807 F.3d 541, 544 (2d Cir. 2015)..................................................................16

*Champion Motor Group v. Visone Corvette*, 992 F. Supp. 203, 205-206, 1998 U.S. Dist. LEXIS 1643, *5-6...................................................................................................4, 7

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)..............................14

*Clarke v. Intercontinental Hotels Groups, PLC*, 2013 U.S. Dist. LEXIS 76208, *37-38.............................................................................................................................................20

*Comm 'n of N.Y. Harbor,* No. 11 Civ. 5093, 2012 WL 4785703, at *8 (S.D.N.Y. Oct. 4, 2012).....................................................................................................................................19

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).........................................3, 4, 8

*Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 674 (S.D.N.Y. 2012)...................................19

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)...............................................4, 14

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85, 2001 U.S. App. LEXIS 22515, *9, 87 Fair Empl. Prac. Cas. (BNA) 147 ...................................................................................13

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)............................2

*E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006)...................................................................................................................................................21

*Fenner v. News Corp.*, No. 09 Civ 9832 (LGS), 2013 U.S. Dist. LEXIS 170187, 2013 WL 6244156, at *13 n.2 (S.D.N.Y. Dec. 2, 2013)..................................................................19

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26-27, 849 N.Y.S.2d 501 (2007)........................................................................................................................................................7

*Friedl v. City of New York,* 210 F.3d 79, 87 (2d Cir. 2000)..........................................................21

*Gordon v. City of New York*, No. 14 Civ. 6115 (JPO), 2018 U.S. Dist. LEXIS 168849, 2018 WL 4681615, at *20 (S.D.N.Y. Sept. 28, 2018).......................................................19

*Hollins v. United States Tennis Ass'n.*, 469 F. Supp. 2d 67, 71-72, 2006 U.S. Dist. LEXIS 46320, *11...................................................................................................................3, 13, 14

*Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)........................................................2

*Katsoolis v. Liquid Media Grp., Ltd.*, 2019 U.S. Dist. LEXIS 167070, *21-22, 2019 WL 4735364...............................................................................................................................6

*Kim v. Dial Serv. Int'l*, 1997 U.S. Dist. LEXIS 66, *29-30, 73 Fair Empl. Prac. Cas. (BNA) 1139.................................................................................................................................8

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988).....................................................................................................................4, 9

*Lear v. Royal Caribbean Cruises Ltd.,* No. 1:20-cv-4660-GHW, 2021 U.S. Dist. LEXIS 67784, at *10-11 (S.D.N.Y. Apr. 7, 2021).........................................................................3

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009).......................................................19

*Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)....................................16, 19, 20

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).......................................18

*Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir. 1990)....................................................................13

*McDonnell Douglas*....................................................................16

*McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981)....................................................................4

*Mihalik v. Credit Agricole Cheuvreux N.A.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013)......1, 17, 18, 19

*Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)....................................................................2

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995)....................................21

*Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)....................................................................3

*Retail Software Servs. Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988)....................................................................9

*Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010)....................................2

*Scott v. NASCAR*, 2008 U.S. Dist. LEXIS 5039, *17-18, 2008 WL 217049....................................11

*Sherwin-Williams Co. v. Avisep, S.A. de C.V.*, No. 14 Civ. 6227, 2016 U.S. Dist. LEXIS 10270, 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016)....................................................................15

*Sodepac, S.A. v. Choyang Park In Rem,* 2002 U.S. Dist. LEXIS 19360 , No. 02 Civ. 3927, 2002 WL 31296341, at *2 (S.D.N.Y. Oct. 10, 2002....................................................................3

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)....................................................................8

*Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012)....................................20

*Staten v. City of New York,* 2016 U.S. App. LEXIS 12014, *1 (2d Cir. N.Y. 2016)....................16

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. N.Y. 2015)....................16, 17

*Williams v. New York City Housing Authority* 61 AD3d 62, 872 NYS2d 27 (1st Dept 2009)....................................................................*passim*

**INTRODUCTION**

Defendant Dan Albright brought the instant motion to dismiss the claims in their entirety against him  for lack of personal jurisdiction and for failure to state a claim. As set forth herein, Defendant Albright's motion should be denied in its entirety, in the first instance because Defendant Albright is subject to personal jurisdiction under New York's long arm statute (CPLR 302), and because Plaintiff has sufficiently pleaded all her claims, brought in their entirety under the NYCHRL, to survive motion to dismiss. While Defendant Albright would like to discredit Plaintiff's account as nothing more than a "patently false and fabricated," (Albright Memorandum of Law, page 3, Dkt. # 70) in so stating, he not only self-servingly mischaracterizes the facts, but also Defendant seeks to set aside the relevant standard on motion to dismiss, which affords Plaintiff's allegations the presumption of truth as well as every favorable inference, all while purporting to apply it. Further, the New York City Human Rights Law itself does not permit dismissal, even at the summary judgment absent a finding that discrimination played "no role" in the employment decision. *Mihalik v. Credit Agricole Cheuvreux N.A.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013).

Moreover, Defendant Albright's argument that he is not subject to personal jurisdiction under the long arm statute defies credulity, as he is alleged to have repeatedly made unlawful demands of Plaintiff while expressing his discriminatory animus and also engaged in retaliatory harassment in the One World Trade Center office in New York City (Prejean Aff.  ¶¶6-9). Thus, he directly engaged in the tortious acts complained of within New York. For these and other allegations giving rise to jurisdiction, and other arguments raised here, Defendant Albright motion should be denied in its entirety.

**I.     DEFENDANT ALBRIGHT IS SUBJECT TO PERSONAL JURISDICTION UNDER NEW YORK'S LONG ARM STATUTE CPLR 302**

Defendant Albright argues he is not subject to personal jurisdiction either under a theory of general jurisdiction under CPLR 301, nor specific jurisdiction under CPLR 302. Here, Plaintiff argues Defendant Albright is subject to personal jurisdiction under New York's long arm statute, which provides in relevant part that a "court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce [….] [CPLR 302]

**A.  Standard On 12(B)(2) Motion**

To survive a Rule 12(b)(2) motion to dismiss,

> a plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted). In the absence of a "full-blown evidentiary hearing on the motion," the plaintiff is required to make only "a *prima facie* showing" that jurisdiction exists. *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010) (citation omitted). At this preliminary stage, such a showing "may be established solely by allegations" pleaded in good faith. *Aviles*, 380 F. Supp. 3d at 256 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam)). Still, jurisdiction must be alleged with "factual specificity"; conclusory statements will not suffice. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). [ *In re Lifetrade Litig.*, 2021 U.S. Dist. LEXIS 59738, *13-14, 2021 WL 1178087]

Indeed, where there has been no discovery, "a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902

F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 112 L. Ed. 2d 116, 111 S. Ct. 150 (1990)). A *prima facie* case for personal jurisdiction involves three elements: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014).

Further, **"<u>Plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case.</u>"** *Sodepac, S.A. v. Choyang Park In Rem*, 2002 U.S. Dist. LEXIS 19360 , No. 02 Civ. 3927, 2002 WL 31296341, at *2 (S.D.N.Y. Oct. 10, 2002). That is, in analyzing the affidavits, the facts are construed in the light most favorable to the Plaintiff with all doubts resolved in its favor, "notwithstanding a controverting presentation by a moving party." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir.1993). See also *Lear v. Royal Caribbean Cruises Ltd.,* No. 1:20-cv-4660-GHW, 2021 U.S. Dist. LEXIS 67784, at *10-11 (S.D.N.Y. Apr. 7, 2021. A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Further, in terms of the level of specificity required to succeed on a 12(b)(2) motion, even where the allegations are "insufficiently developed" but  provide a "sufficient start toward establishing personal jurisdiction"  they will be deemed sufficient. Only sparse and conclusory allegations are deemed insufficient. *Hollins v. United States Tennis Ass'n.*, 469 F. Supp. 2d 67, 71-72, 2006 U.S. Dist. LEXIS 46320, *11.

Here, Plaintiff has precisely made such a *prima-facie* showing based on fact-specific allegations. With respect to the statutory basis for jurisdiction, contrary to Defendant Albright's affidavit, the Second Amended Complaint  ("SAC") and Plaintiff's affidavit are replete with statements regarding his transaction of business in New York, his tortious acts in New York, and his tortious acts outside New York causing Plaintiff injuries in New York. Further, the acts

3

providing jurisdiction pursuant to the Long Arm statute have a sufficient nexus to the allegations in the complaint to establish jurisdiction (*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). See also *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). Finally, Plaintiff can establish that the exercise of jurisdiction is consistent with principles of due process.

### B. Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(1) As Defendant Albright Conducted Business In The State

New York's long-arm statute extends jurisdiction over any party who "transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the suit arises from those acts. CPLR § 302(a)(1) "is a 'single act statute', and **proof of one transaction in New York** is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Champion Motor Group v. Visone Corvette,* 992 F. Supp. 203, 205-206, 1998 U.S. Dist. LEXIS 1643, *5-6 (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

In order to succeed under CPLR § 302(a)(1) "The totality of circumstances must be evaluated to determine whether defendants have engaged in some purposeful activity in New York in connection with the matter in question." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986).

Here, Plaintiff's allegations establish a *prima facie* case that Defendant Albright "transacts any business within the state" or "contracts anywhere to supply goods or services in the state." Specifically, Plaintiff in her SAC, Albright's own affidavit, Plaintiffs' Affidavit attached to the Affirmation of Ria Julien, are replete with evidence that Albright transacted business in

New York. Specifically, Albright swears he travelled to New York for business four times per year (Albright Aff ¶11) and two times during Plaintiff's tenure   (Albright Aff ¶12). He states he had one or two face-to-face interactions with Plaintiff  (Albright Aff ¶16) and states he recalls only a single telephone call with Plaintiff  (Albright Aff ¶18) and states he cannot  recall  having any emails with Plaintiff (Albright Aff ¶18).  Plaintiff disputes these vague recollections of Defendant Albright as gross understatements of their interactions, and alleges that she met with Defendant Albright twelve times (Prejean Aff. ¶11) , and on approximately eight occasions he spoke with her at his desk (Prejean Aff. ¶7) , and on four occasions he accompanied by other executives endorsed illegal hiring criteria (Prejean Aff. ¶9) . She   further states the  incidents recounted at SAC 91 -92 occurred in New York.  (Prejean Aff. ¶6), and that he threatened her job in repeated meetings in New York in retaliation for not acquiescing to his illegal hiring criteria by telling her work and her position was "unnecessary" (Prejean Aff. ¶¶8-9, 24, 25) and participating in a campaign to get her fired, including by acts taken and threats made directly in New York at the World Trade Center Offices  (Prejean Aff. ¶¶12-13).

In addition to the torts engaged in  by Defendant Albright within and without New York, with respect to the business done in New York by Defendant Albright, he admits he travelled to New York for quarterly meetings to meet with the leadership team to discuss strategy  (Albright Aff. ¶11). While Defendant Albright did not go into further detail regarding the nature of his work Plaintiff provides in her affidavit that Defendant Albright came to New York, "meeting with senior executives including the president, his peer partners, who  offices are in NYC, or flew in, to conduct business for the Consulting Division for which [Plaintiff]  was recruiting executive partner talent. " (Prejean Aff.  ¶14 ). She further alleges that on his visits to New York, it is "very likely Albright signed contracts in New York, as this is where the meetings for most contracts where

5

primarily held." (Prejean Aff. ¶15 ). Further, Plaintiff alleges regular interaction and supervision by Defendant Albright (Prejean Aff. ¶¶19-22). As indicated in the Affidavit of Plaintiff, this occurred by phone, text and email. (Prejean Aff. ¶16). Further Plaintiff alleges numerous direct in person interactions with Defendant Albright including (Prejean Aff. ¶8,9) where he made statements expressing discriminatory animus, where Plaintiff engaged directly in protected activity by protesting such statement to him directly, and where Defendant Albright directly retaliated in person by stating her position was unnecessary and seeking to have her fired (Prejean Aff. ¶¶6,8,9, 12,13, 24, 25).

In *Katsoolis v. Liquid Media Grp., Ltd.*, 2019 U.S. Dist. LEXIS 167070, *21-22, 2019 WL 4735364, this Court found personal jurisdiction where there were communications with New York and where Defendant "did business in New York by relying on Plaintiffs as representatives in the New York region." Indeed, Defendant Albright reliance on Plaintiff as his representative in New York to recruit partner level candidates for the Consulting Division provides an additional basis for finding Defendant Albright did business in New York. See (Prejean Aff. ¶14).

Moreover, during his numerous visits to New York City, Defendant Albright stated he travelled to New York four times annually for business and to meet with the leadership team to discuss strategy (Albright Aff. ¶11). That is, in performing his job for Defendant Infosys, he provided services to his employer in New York and given the locus of these "leadership" meetings, New York was a central location for the performance of business and these trips with leadership were central to Defendant Albright's work. Plaintiff in her affidavit further alleges it is likely that he signed contracts during client meetings held in New York City (Prejean Aff. ¶15).

That is, per the SAC, Plaintiff's Affidavit, and the Affidavit of Defendant Albright, he was physically present transacting business, providing his services to the Company, and meeting with

Plaintiff, colleagues and others.  Each of these discrete acts separately (as a "single act") or viewed together, suffices to establish purposeful availment. See *Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26-27, 849 N.Y.S.2d 501 (2007) (purposeful activity where defendant attempted to establish relationship through calls, faxes and emails projected into New York over months). See also *Champion Motor Group v. Visone Corvette*, 992 F. Supp. 203, 206, 1998 U.S. Dist. LEXIS 1643, *5-6 (finding personal jurisdiction where Defendant was personally involved in the negotiation and commencement of the sale agreement with Champion and he travelled to New York to complete the agreement and negotiations). See also *Aviles v. S&P Global, Inc.,* 380 F. Supp. 3d 221, 262, 2019 U.S. Dist. LEXIS 53760, *56, 2019 WL 1407473 (personal jurisdiction found where Defendant Marcum was "physically present in New York" and during some of which Marcum purposefully cultivated "a continuing relationship" with Wells Fargo's New York-based predecessor," holding such clearly constitutes "the transaction of business within the meaning of New York's long-arm statute.")  Indeed, Defendant Albright's Affidavit and his memorandum of law arguing "limited contacts with New York" is betrayed by the centrality of his role and the centrality of New York to such role. Defendant Albright admits: "Defendant Albright was hired as a Partner in the Consulting Division of Defendant Infosys. (Albright Aff. ¶ 3.)" and  "Defendant Albright also served on the leadership team at Infosys Consulting"(Albright Aff. ¶ 3.)" (Albright Memorandum of Law, page 4) where quarterly leadership meetings were held in New York (Albright Aff. ¶ 11.)   It is precisely because of this position that he was required to supervise Plaintiff in her work recruiting partner level candidates. Indeed, Defendant Albright acknowledges, "Unlike § 301, CPLR § 302 allows courts to exercise specific jurisdiction over corporate principals based on transactions made or acts taken in a corporate capacity." *Wallace*

*Church & Co. Inc*, 2020 WL 4369850, at *6 (Albright Memorandum of Law, page 9)—precisely the case here.

Finally, *Kim v. Dial Serv. Int'l*, 1997 U.S. Dist. LEXIS 66, *29-30, 73 Fair Empl. Prac. Cas. (BNA) 1139 is instructive. In that case, personal jurisdiction was found under 302(a)(1) where the individual Defendant made regular business trips to New York to oversee the operations of the Company—including Plaintiff's employment as part of such business function—and made harassing comments to Plaintiff during one such trip. Again, such is precisely the case here. (Prejean Aff. ¶¶6, 8, 9, 12, 13, 24, 25 ). While Defendant Albright  attempts to state these contacts are here happenstance or random citing *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 388, 2006 U.S. Dist. LEXIS 27426, *42 (finding no jurisdiction where Wallin never traveled to New York for business or pleasure during the term of his employment."), in the first instance *Beattie, supra* does not turn on "random," "fortuitous"  or "attenuated" contacts, nor does the case it cites for that proposition make reference to such. See CutCo Indus. v. Naughton, 806 F.2d 361, 367, 1986 U.S. App. LEXIS 34358, *15.  Here Plaintiff alleges that Albright was repeatedly in New York attending to business far in excess of the quarterly meetings (Prejean Aff. ¶10), and that he transacted important business on behalf of the company (Prejean Aff. ¶14), he managed her directly (Prejean Aff. ¶¶19, 20, 22) and in person during these meetings and he endorsed illegal hiring criteria and threatened her when she did not yield to his demands by beginning a campaign to find her position "unnecessary" (Prejean Aff. ¶¶6, 8, 9, 12, 13, 24, 25). Looking to the totality of the circumstances, Defendant Albright clearly transacted business in New York.

Further, Plaintiff's claims "arise" precisely out of the acts giving rise to jurisdiction. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some

articulable nexus between the business transacted and the cause of action sued upon,'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) or when there is "a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988)).

That is, Defendant Albright's acts alleged as satisfying CPLR 302(a)(1) all involved his employment with Infosys, his management of Plaintiff and in many cases precisely entail the unlawful acts and protected activity alleged in the Complaint. Accordingly, once due process is satisfied as discussed below, a finding of personal jurisdiction under CPLR 302(a)(1) is warranted.

Defendant Albright additionally, may satisfy CPLR § 302(a)(1) on a theory of alter ego. See *Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 262, 2019 U.S. Dist. LEXIS 53760, *56, 2019 WL 1407473 CPLR § 302 allows courts to exercise specific jurisdiction over corporate principals based on transactions made or acts taken in a corporate capacity. See *Retail Software Servs. Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (upholding long-arm jurisdiction over corporate employees who were the "primary actors" in the transaction in New York that was the source of the litigation) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 522 N.E.2d 40, 47, 527 N.Y.S.2d 195 (1988)). In *Aviles*, this court found jurisdiction as to a Defendant on the basis that "if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has "played a part in the [corporate] activities that gave rise to the action" is likewise subject to jurisdiction, to the extent that due process permits, due to the agency relationship between the corporation and the officer." Id at *52. Here, Defendant Infosys does not contest personal jurisdiction over the Company and Defendant Albright as alleged in the SAC was directly involved in the acts that gave rise to Plaintiff's suit. *See also*, Defendant Albright's

citation to *Wallace Church & Co. Inc*, 2020 WL 4369850, at *6 for the same principle. (Albright Memorandum of Law, page 9).

**C.** **Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(2) As Defendant Albright Performed A Tort In New York**

Section 302(a)(2) provides for personal jurisdiction over a non-domiciliary who "commits a tortious act within the state". CPLR 302(a)(2). This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). Here, as alleged in the SAC and the Affidavit of Plaintiff, Defendant Albright was physically present in the state when the following acts took place. While Defendant Albright argues "Plaintiff does not plead any facts asserting that any of the alleged discriminatory conduct she attributes to Defendant Albright actually occurred in New York" (Albright, Memorandum of Law, page 10), Plaintiff's Affidavit makes abundantly clear that these events occurred in person. Specifically, Plaintiff alleges:

- In my Second Amended Complaint I have stated Defendant Dan Albright stated that he did not want me to recruit female caregivers and people over 50. The incidents stated at SAC 91 -92 all occurred at the World Trade Center Office. In fact at that time Kurtz and Albright approached me together at my desk and the recounted conversation occurred there. (Prejean Aff. ¶ 6)
- There were about eight times when Mr. Albright appeared, unscheduled, at my Desk at One World Trade Center in an open environment requesting I follow him into an office to discuss executive candidates. In each case he dismissed my very detailed candidate inputs that are all required to submit a candidate to start the very complex interviewing process. Each time he asked ages and if females were caregivers. Each time he threatened my job if I did not comply with his illegal hiring requirements and to screen candidates with these illegal questions. Each time I explained the questions were illegal and I would not ask them and that is illegal for him or any one at Infosys, or working as a vendor for Infosys, to ask. Each time Albright talked over me, dismissed my reminders of illegalities as he was an officer, treating me as a nuisance and unnecessary. In about four conversations with other executives and myself, in the NYC offices, Albright again told me he needed candidates under 50 and especially women who are not caregivers. To the other partners in the conversation, Albright implied that my work was unnecessary unless

I delivered a pipeline of candidates vetted for age and childcare status. Each time, I reminded everyone in the conversation that it was illegal. Albright was undermining my role, protection of the company and threatening to have me fired as 'unnecessary'- though he was aware I was considered to have been doing a good job under unclear circumstances, by his peer partners, my talent acquisition managers and by his boss Mark Livingston—who was also demanding I vet candidates for age and females for caregiving status. (Prejean Aff. ¶¶7-9)

- Dan Albright, in cahoots with Jerry Kurtz attempted to control Livingston's partner hiring agenda, as well as mine and Clint Kelley, by starting a campaign to get me fired. He did so from the WTC/NYC offices, as he informed me while berating me for not obeying his demands. (Prejean Aff. ¶¶12-13)

- Repeatedly in person I was threatened by Defendant Albright for stating I would do my job within the bounds of the law and not in accord with his unlawful instructions made to me (including those made in person as alleged in my Second Amended Complaint SAC 161-162  to recruit in such a way as to exclude people near or over 50 and female caregivers.  The threats made directly to me in New York City, in addition to those made over the phone, were incredibly distressing to me. (Prejean Aff. ¶¶24-25).

Thus, while physically present in the state Defendant Albright committed tortious acts consisting of retaliatory hostility, including  deeming Plaintiff's job superfluous due to her protest of his endorsement for sexist and ageist hiring criteria. These acts are precisely those that form the basis of this lawsuit and, accordingly, the requisite nexus is satisfied here. Here, *Scott v. NASCAR*, 2008 U.S. Dist. LEXIS 5039, *17-18, 2008 WL 217049, is particularly instructive. In that case, alleging race discrimination, personal jurisdiction was found based on acts by Defendants taken in Watkins, New York within the scope of Plaintiff's discrimination claims on a single day—on the last day of Plaintiff's employment.

While Defendant Albright argues that no jurisdiction can be found under CPLR 302(a)(2) or (a)(3) as Plaintiff has failed to state a claim for discrimination, this argument is unfounded as this court may not entertain dismissal on the merits absent a finding of jurisdiction. Defendant Albright's arguments thus have no bearing on personal jurisdiction, nor do his denials as to tortious acts in his Affidavit receive any favorable inference under either grounds of his motion (Albright Aff. ¶¶21-27). As to jurisdiction, his claims are contested by Plaintiff and as to the sufficiency of

her pleadings Plaintiff is afforded every favorable inference. Thus Defendant's primary argument against a finding of jurisdiction under  CPLR 302(a)(2) fails.

**D. Plaintiff Can Establish Personal Jurisdiction Pursuant to CPLR 302(a)(3) As Defendant Albright Performed A Tort Without New York With Effects In New York**

Under Section 302(a)(3), Plaintiff must allege that the Defendant committed a tortious act outside New York causing injury within New York and that the defendant (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York; or (ii) "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3).

Here, Plaintiff alleges, *inter alia*, a campaign of harassment by Defendant  Albright in conjunction with the other individual Defendants consisting of continual retaliatory threats and demeaning treatment.  (Prejean Aff. ¶¶6, 8, 9, 12, 13, 24, 25 ). Further,  as incorporated by reference into Plaintiff's complaint at  (Prejean Aff.  ¶21):

- In the following months, Defendant Livingston, along with Defendants Kurtz and Albright, engaged in a concerted campaign of harassment, intimidation, and threats  to Plaintiff and her job, through consistent threats to bring in an outsourcing company to deprive Plaintiff of her job.   (SAC ¶ 158)
- Defendants Livingston, Kurtz and Albright had each made their discriminatory animus express to plaintiff and were united in their desire to retaliate against her for her protected activity.  (SAC ¶ 159)
- Despite this pressure campaign, Plaintiff continued to do her job competently and within the bounds of the law, presenting candidates who she believed would be successful in the job without regard to age, gender or caregiver status, into which she never inquired.  (SAC ¶ 160)
- Yet, after meeting candidates, Defendants Livingston, Kurtz and Albright  variously stated that they did make such forbidden inquiries of the candidates in their interviews. (SAC ¶ 161)
- Over the following months, Plaintiff found herself continually reiterating that these inquiries were unlawful in nature.  (SAC ¶ 162)
- These conversations with Defendants Kurtz and Albright occurred weekly.   (SAC ¶163)
- On a weekly basis in response to these requests to act within the bounds of the law, Defendants Kurtz and Albright reiterated their displeasure with Plaintiff not discriminating

- against these candidates and their desire to fire her, outsource her job and work with a particular unscrupulous vendor that would unlawfully weed out older candidates and female candidates with children at home.  (SAC ¶ 164)
- These conversations were hostile and appeared to be an attempt to wear down Plaintiff and have her comply with the illegal demands.  (SAC ¶ 165)
- Each time Plaintiff expressed concerns in regard to the aforesaid discriminatory hiring practices, these high-level executives and others in similar high-level positions responded that Infosys' decision makers were unconcerned about such "legalities."  (SAC ¶ 166)
- Plaintiff was marginalized and treated like a nuisance every time she reminded these Infosys executives of such "legalities."  (SAC ¶ 167)

These acts were meant to create a hostile work environment and ultimately were tied to Defendant Albright's  campaign (jointly with others) to remove her. While such acts were in part taken outside New York, the situs of injury—the emotional distress felt by Plaintiff and the ultimate termination culminating from such acts—occurred in New York.

As held by the Second Circuit in *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 85, 2001 U.S. App. LEXIS 22515, *9, 87 Fair Empl. Prac. Cas. (BNA) 147:

> when a person is employed in New York (or performs a substantial part of the duties of his or her employment in New York), his or her removal from that employment (or from those duties) is a New York event that constitutes "the first effect of the tort" of discharging the employee. *Bank Brussels Lambert*, 171 F.3d at 792. Therefore, we hold that such a removal constitutes an "original event" occurring in New York which, together with [Plaintiff's] in-state injury, satisfies the requirements of § 302(a)(3).   [Id.]

The situs of injury to Plaintiff here is New York, under facts consistent with *DiStefano*. See also, *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (in employment discrimination action, injury occurred where employment was located). Moreover, *Hollins v. United States Tennis Ass'n.*, 469 F. Supp. 2d 67, 77, 2006 U.S. Dist. LEXIS 46320, is instructive. In that case, Defendants engaged in harassment both within and without the state, just as here. Just as here, Plaintiff alleged personal jurisdiction under §§302(a)(2) and (3). In that case, with respect to (a)(3), allegations of discriminatory exclusion without the state were held sufficient to establish jurisdiction.

13

Plaintiff has also alleged facts sufficient to satisfy section 302(a)(3)(i)'s requirement that the Defendant "regularly does . . . business, or engages in any other persistent course of conduct" in New York. As held in *Hollins v. United States Tennis Ass'n.,* 469 F. Supp. 2d 67, 77, 2006 U.S. Dist. LEXIS 46320, *29, the amount of business that must be conducted to satisfy this standard "is less than that which is required to satisfy the conventional doing business standard." *Id.* Accordingly, all the facts discussed in connection with §302(a)(1), including but not limited to Defendant Albright's day-to day supervision of Plaintiff, his meetings in New York, his phone and email communication in New York, as well as his acts done in person in New York in furtherance of the business are sufficient to satisfy this prong.

Accordingly, personal jurisdiction may be found on the basis of §302(a)(3), nor do Defendant Albright's arguments regarding FRCP 12(b)(6) have any bearing on the analysis, as previously stated herein.

### E. Exercise Of Jurisdiction Under CPLR 302(a) Accords With Due Process

Plaintiff has set forth a basis for the exercise of personal jurisdiction under CPLR 302(a)(1), (a)(2) and (a)(3). The Second Circuit has found that "where personal jurisdiction is appropriate under section 302(a), the requirements of due process are met." *D.H. Blair & Co.,* 462 F.3d at 105). Indeed, with respect to exercise of jurisdiction under CPLR 302(a)(1), based on transacting business, district courts in this Circuit have found such inquiry to be "co-terminus" *Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 264, 2019 U.S. Dist. LEXIS 53760, *59-60, 2019 WL 1407473. Accordingly, a finding of jurisdiction under CPLR 302(a)(1) necessarily satisfied due process.

With respect to the due process analysis under CPLR 302(a)(2) and (a)(3), looking to various factors as set forth in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d

Cir. 2010), Defendant Albright's arguments as to why exercise of personal jurisdiction does not comport with due process all fail.

Specifically, Defendant Albright argues that it is burdensome to travel to New York to litigate this action. But "th[e] burden [of travel] alone does not render the exercise of personal jurisdiction unreasonable." *Sherwin-Williams Co. v. Avisep, S.A. de C.V.*, No. 14 Civ. 6227, 2016 U.S. Dist. LEXIS 10270, 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016). Next, Defendant Albright states that New York has no interest in providing redress for this claim because it is futile. Defendant thus seeks to elide two arguments. Inasmuch as Plaintiff's claims are not dismissed for failure to state a claim–which they should not be under the *Williams* standard–- this prong weighs in Plaintiff's favor. Defendant Albright concedes the third prong. While Defendant Albright states the fourth prong as to location of witnesses and evidence is burdensome, much of the paper evidence in this case is stored in Corporate Defendants' New York office and the availability of technology to perform remote depositions obviates any inconvenience claimed by out-of-state witnesses. Moreover Plaintiff alleges multiple open and notorious acts of hostility taking place at the New York office and multiple office worker witnesses based in New York, though unnamed as Defendants, may be potential witnesses. (Prejean Aff. ¶9). With respect to the fifth factor, Defendant Albright argues no public policy interest is served by permitting Plaintiff to haul him into court on employment claims where he is not the employer. But the NYCHRL is not limited to employers and provides liability for managers and even coworkers' unlawful acts. Moreover it is clear that the public policy of the state of New York as articulated in the Restoration Act and other statements of the Courts, requiring the broadest reading of the NYCHRL are served by holding foreign domiciliaries who commit acts of discrimination within the state of New York, or outside New York with effects felt by victims of employment discrimination in New York,

responsible under the NYCHRL. The NYCHRL and its exercise here thus furthers a substantive and important social policy. In sum, personal jurisdiction over Defendant Albright is clearly warranted here.

## II.   PLAINTIFF'S CLAIMS ARE ALL SUFFICIENTLY PLEADED

Turning next to Defendant's argument that Plaintiff's claims should be dismissed under FRCP 12(b)(6), this argument too should be rejected by this court.

### A.   Standard On 12(B)(6) Motion

"At the initial stage of a litigation, the plaintiff's burden is minimal." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. N.Y. 2015). On motion to dismiss, a Complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly, 550* U.S. 544, 570 (2007), and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court "accept[s] as true the factual allegations in the complaint and draw[s] all inferences in the plaintiff's favor." *Biro v. Conde Nast,* 807 F.3d 541, 544 (2d Cir. 2015). See also; *Staten v. City of New York,* 2016 U.S. App. LEXIS 12014, *1 (2d Cir. N.Y. 2016). "When there are well-pleaded factual allegations, a court should assume their veracity." *Vega*, 801 F.3d at 86.

A plaintiff meets her burden to plausibly allege facts if the pleaded facts "provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega* 801 F.3d at 84-85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). See also *Alexander v. Bd. of Educ.,* 648 Fed. Appx. 118, 119 (2d Cir. N.Y. 2016) (stating that a Plaintiff needn't plead a prima facie case under *McDonnell Douglas* to survive a motion to dismiss, as "McDonnell Douglas burden-shifting framework is an evidentiary standard, not a pleading requirement, and is therefore not applied at the Fed. R. Civ. P. 12(b)(6) motion-to-dismiss stage.")

16

"In making the plausibility determination, the court is to draw on its judicial experience and common sense. … In making the plausibility determination, the court must be mindful of the elusive nature of intentional discrimination. Clever men may easily conceal their motivations. Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun, evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega,* 801 F.3d at 86.

Here, with all inferences being drawn in favor of the non-moving party, Plaintiff has clearly met her burden, both by direct and indirect evidence, of presenting well-pleaded facts that plausibly state that her sex and/or age "was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87.

Moreover, Plaintiff brings only NYCHRL claims, not Title VII claims. See *Williams v New York City Housing Authority* 61 AD3d 62, 872 NYS2d 27 (1st Dept 2009). See also *Mihalik v. Credit Agricole Cheuvreux N.A.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (holding under New York City's Human Rights Law, summary judgment must not be granted "unless the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions.").

### B.   Plaintiff Has Stated A *Prima Facie* Case Of Age And Gender Related Hostility and Retaliation

Defendant Albright argues that the allegation that he personally endorsed discriminatory hiring criteria is insufficient as a matter of law as Plaintiff does not plead specific epithets, that her pleading is vague, summary and an impermissible group pleading. Defendant Albright cites no authority for the proposition that Plaintiff must cite specific epithets used or may not make allegations against multiple individuals. Plaintiff's complaint clearly sets out a campaign of harassment at SAC ¶ 158-170 and her allegations in her Affidavit provide further support and

specific details as to the location and nature of the hostile statements made by Albright, including his retaliatory focus on making her job unnecessary. (Prejean Aff.  ¶¶8-9). That Defendant Albright denies or disputes the facts is not a basis to disregard them. That is, the SAC sets forth a campaign of hostility   carried out by Defendant Albright along with the other individual corporate defendants,  because Plaintiff would not violate civil rights laws by agreeing only to  recruit "women without children at home, and candidates not approaching 50." (SAC ¶ 88).  Defendants in human rights cases are not required to use epithets  such as "boomers" or "broads" to state a claim for  age  and or gender discrimination.   It is clearly sufficient to repeatedly say, in whatever less memorable words, don't hire this type of person. It is a misstatement of the law to say that that  Defendant Albright's—along with Defendants Kurtz and Livingston's—direct statements of discriminatory intent as to who to hire  do not amount  to "invidious comment about a protected group". Openly stating such hiring prejudices is direct evidence of discriminatory animus.

Further, when Defendant  Albright  argues that Plaintiff was not treated less well due to age, gender or retaliation,  he clearly overlooks the allegations, adopting his own view of the facts in place of Plaintiff's.  Plaintiff alleges a retaliatory pressure campaign, weekly meetings and threats to outsource her job by Defendant  Albright and Kurtz SAC ¶ 159-164). Defendant Albright may have been angry because of how Plaintiff performed her job, but that was *because* he thought it her job to apply unlawful hiring criteria to candidates.

Plaintiff clearly makes out her claims under the city law.   Courts must review NYCHRL claims "independently from and 'more liberally' than their federal and state counterparts." *Loeffler  v*. *Staten  Island  Univ*. *Hosp*., 582  F.3d  268,  278  (2d  Cir. 2009) (citing *Williams  v*. *N.Y.C*. *Hous*. *Auth*., 61  A.D.3d  62,  872  N.Y.S.  2d  27,  31  (1st  Dep't 2009)). See also *Mihalik  v*. *Credit Agricole Cheuvreux N.A*., 715  F.3d  102,  110 n.8  (2d  Cir. 2013)

(adopting *Williams* and holding under New York City's Human Rights Law, summary judgment must not be granted "**unless the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions.**") Moreover, under the NYCHRL, *Comm 'n of N. Y. Harbor*, No. 11 Civ. 5093, 2012 WL 4785703, at *8 (S.D.N.Y. Oct. 4, 2012), "a work environment need not be offensive, pervasive, and continuous in order to qualify as hostile."); see also *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 674 (S.D.N.Y. 2012) (holding in order to state a claim under the NYCHRL, Plaintiff must allege that she "has been treated less well than other employees because of her membership in a protected class."). Under this standard, "even 'a single comment' may be actionable in appropriate circumstances." *Mihalik*, 715 F.3d at 114 (quoting *Williams*, 872 N.Y.S.2d at 40-41 & n.30).

Further, "The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by [NYCHRL] § 8-107(1)(a)." *Fenner v. News Corp.*, No. 09 Civ. 9832 (LGS), 2013 U.S. Dist. LEXIS 170187, 2013 WL 6244156, at *13 n.2 (S.D.N.Y. Dec. 2, 2013). As such, "[c]ourts have applied largely the same standard to hostile work environment claims under NYCHRL as they have to disparate impact claims under NYCHRL." *Gordon v. City of New York*, No. 14 Civ. 6115 (JPO), 2018 U.S. Dist. LEXIS 168849, 2018 WL 4681615, at *20 (S.D.N.Y. Sept. 28, 2018).

[A]n inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; **or its invidious comments about others in the employee's protected group**; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)) [bold added].

Further, the NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," *Albunio v. City of New York*, 16 N.Y.3d 472, 477-478, 2011 N.Y. LEXIS 498, *6.

  Here, Plaintiff has met the standard with respect to age,  gender and retaliation. Under the NYCHRL, there are not separate standards for "discrimination" and "harassment" claims; rather, "there is only the provision of the law  that proscribes imposing different terms, conditions and privileges of employment based, *inter alia*, on gender." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) (citing (Administrative Code § 8-107[1][a])). Here, Plaintiff alleges with respect to age and gender that she was alerted to  animus  against her and others by way of Defendant Albright's  discriminatory hiring preference (SAC 88, 91, 92, 158, 159, 161). Plaintiff reasonably understood these comments as admissions regarding a company pattern and practice. Such comments disparaging others based on their protected status are sufficient to set forth a *prima facie* case of discrimination. See *Littlejohn, supra*.  Plaintiff need not plead the specific language verbatim.  Here, Plaintiff's allegations clearly exceed the standard set forth in *Williams* that summary judgment may not be granted unless discrimination plays no role.

  Plaintiff alleges with respect to gender that Defendant  Albright  pressured her to  adopt his unlawful preferences by (SAC 88-92, 160-164). Moreover, to suggest that ongoing  remarks of express unlawful animus regarding people over fifty and female caregivers are not protected by the NYCHRL and do not state a cognizable claim for hostile work environment under the City law and could not have motivated her unlawful termination, as Defendant Albright  does,  misstates the breadth of the City law. To hold so would invite people in the workplace to make hateful and discriminatory comments about others without consequence. Such a position does not accord with *Williams*. See *Clarke v. Intercontinental Hotels Groups, PLC*, 2013 U.S. Dist. LEXIS 76208, *37-

38 (denying motion to dismiss age, race and gender claims). The authorities cited by Defendant Albright   do not support his position.  Moreover,  in an EEOC charge filed in New York by four other women, they allege systemic discrimination against women by Infosys. They allege systemic hostility to women in positions of authority where in "the United States, women make up only 14% of leadership roles, and only about 21% of Infosys's entire domestic workforce." Exhibit B to Julien Aff. It further recounts a pattern of professionally undermining and marginalizing women consistent with Plaintiff's allegations. Accordingly, there is no basis to dismiss Plaintiff's claims.

### C.  Plaintiff Should Be Allowed To Amend If Necessary

Finally even if *arguendo*, the Court finds a deficient pleading—which Plaintiff argues it should not—there is no basis to deny amendment or to foreclose an application to amend by Plaintiff. Pursuant to Fed. R. Civ. P. 15, leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); see also, e.g., *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995) (granting leave to amend four years after original Complaint), *aff 'd after remand*, 101 F.3d 1393 (2d Cir. 1996); *E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006) ("This mandate to give leave freely is to be heeded." (citations omitted)). Further, the Second Circuit has explained that "district courts should not deny leave [to amend] *unless* there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York,* 210 F.3d 79, 87 (2d Cir. 2000). Crucially, "The party opposing a motion to amend bears the burden of establishing that the amendment would be futile." *See Ballard v. Parkstone Energy, LLC*, No. 06 Civ. 13099 (RWS), 2008 U.S. Dist. LEXIS 71350, at \*7 (S.D.N.Y. Sept. 19, 2008), 2008 WL 4298572. As Defendant has not established excessive delay, prejudice to the opposing party, or futility,  amendment should not be barred.

21

<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiff respectfully submits that Defendant Albright's motion to dismiss for lack of personal jurisdiction and for failure to state a claim against Defendant Albright must be denied.

Dated: New York, NY
        January 11, 2022

Respectfully submitted,

___s/_____
Mirer, Mazzocchi & Julien, PLLC
By Ria Julien
Jeanne Mirer
1 Whitehall St., 16th Floor
New York, NY 10004
(212) 231-2235
*Attorneys for Plaintiff*

22